UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERMAINE HOWARD WESLEY,

    Plaintiff,

v.                                        Case No. 8:24-cv-2364-WFJ-LSG

JOHN DOE I, *et al.*,

    Defendants.
_____/

## ORDER

*Pro se* Plaintiff Jermaine Howard Wesley, a Florida prisoner, initiated this action by filing a civil-rights complaint under 42 U.S.C. § 1983. (Doc. 1). Because Mr. Wesley is a prisoner proceeding *in forma pauperis*, the Court is required to screen his complaint. *See* 28 U.S.C. § 1915A (requiring a district court to screen a complaint in "a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and to dismiss the complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief"); *see also* 28 U.S.C. § 1915(e)(2) (requiring dismissal of a complaint in an *in forma pauperis* proceeding under the same circumstances).

This case arises from a stabbing that allegedly took place at Avon Park Correctional Institution. (Doc. 1 at 2). Around 1:30 p.m. on December 21, 2021, Mr. Wesley heard "an announcement for recreation" in his dormitory. (*Id.*) As he made his way to the recreation yard, Mr. Wesley noticed that John Doe I—a correctional officer—had "abandoned" the

"post where officers [were] to be assigned [ ] for the purpose of supervision." (*Id.* at 2-3). While he stood in front of a "shack" in the yard, Mr. Wesley was "assaulted by an unknown prisoner" wielding a "shank." (*Id.* at 3). He was stabbed "multiple times in the neck and back area and once on the upper left shoulder." (*Id.*) Mr. Wesley ran toward the front gate, but "there was no officer [present] to protect, aid, assist, or intervene." (*Id.* at 4). Mr. Wesley left the yard, returned to his dormitory, and entered a bathroom "to inspect [his] injuries." (*Id.* at 5).

After determining that he was "in desperate need of medical attention," Mr. Wesley left the bathroom and ran to the "officer station," which was occupied by Officer A. Grisheimer. (*Id.*) Mr. Wesley "repeatedly knock[ed] on the officer station's window," "begging for help" and "trying to get [Officer Grisheimer's] attention." (*Id.*) According to the complaint, Officer Grisheimer "intentionally ignored" Mr. Wesley and "continued to fraternize with another unknown inmate." (*Id.*) Five minutes passed before Officer Grisheimer opened a "side door" in the dormitory. (*Id.*) Mr. Wesley decided to leave the dormitory "out of fear that his unidentified attacker could have followed him." (*Id.*) Outside the dormitory, a sergeant stopped Mr. Wesley, saw his injuries, and arranged for him to be taken to the "medical building." (*Id.* at 6). There, Mr. Wesley was interviewed, and his injuries were photographed. (*Id.*) He then "received medical attention" and "was subsequently taken to administrative confinement." (*Id.*)

Based on these allegations, Mr. Wesley sues three defendants—Officer Grisheimer, John Doe I (the officer who allegedly abandoned his post in the recreation yard), and John Doe II (John Doe I's supervisor, who was allegedly responsible for assigning officers to

the post in the yard). (*Id.* at 1-2). Liberally construed, the complaint alleges that (1) John Does I and II failed to protect Mr. Wesley from the risk of inmate assault, and (2) Officer Grisheimer was deliberately indifferent to Mr. Wesley's serious medical needs. (*Id.* at 7). As relief, Mr. Wesley seeks compensatory damages, punitive damages, and a declaration that his Eighth Amendment rights were violated. (*Id.* at 7-8).

Upon review, the Court concludes that Mr. Wesley fails to state a failure-to-protect claim against John Does I and II. That claim is therefore dismissed without prejudice and with leave to amend. Mr. Wesley does, however, state a colorable claim against Officer Grisheimer for deliberate indifference to serious medical needs.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Specifically, prison officials must "protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To plead a failure-to-protect claim, a plaintiff must allege that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," (2) the defendant was deliberately indifferent to the risk, and (3) "the constitutional violation caused [his] injuries." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021). To establish deliberate indifference, a plaintiff must show that the defendant "was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). By contrast, "merely negligent failure to protect an inmate from attack does not justify liability under" the Eighth Amendment. *Marbury v. Warden*, 936 F.3d 1227, 1238 (11th Cir. 2019).

Mr. Wesley fails to state a claim for failure to protect. He alleges that John Doe I was not at his "post" in the recreation yard when the stabbing took place, and that John Doe II was the officer in charge of ensuring that the post was properly staffed. (Doc. 1 at 2-3). But Mr. Wesley pleads no facts showing that the defendants knew he "was in danger of being attacked by another prisoner," nor is there any allegation that Mr. Wesley "had previously been threatened or hurt by anyone" in the prison. *Smith v. Salter*, 794 F. App'x 817, 820 (11th Cir. 2019) (affirming dismissal of claim that defendant "should have been at his post inside the cellblock when the [stabbing] happened, but was not, and as a result [he] failed to protect [plaintiff] from the attack"). Thus, Mr. Wesley fails to adequately allege that John Does I and II "had actual knowledge that the offender posed a serious threat to [his] safety and disregarded that risk." *Kimball v. Benjamin*, 632 F. App'x 231, 232 (5th Cir. 2016). The defendants may have been negligent in allegedly leaving the yard unsupervised, but "merely negligent failure to protect an inmate from attack does not justify liability." *Marbury*, 936 F.3d at 1238; *see also Kimball*, 632 F. App'x at 232 ("Whether [defendant's] abandonment of his duty post might have been negligent is immaterial as mere negligence is insufficient to support a claim for deliberate indifference.").

Mr. Wesley does, however, state a claim against Officer Grisheimer for deliberate indifference to serious medical needs. "[P]rison officials violate the bar on cruel and unusual punishments when they display deliberate indifference to serious medical needs of prisoners." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1265 (11th Cir. 2020). An official "who delays necessary treatment for non-medical reasons may exhibit

deliberate indifference." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). Moreover, a plaintiff "does not necessarily need to show that the delay in medical care exacerbated his condition because the delay in care is, itself, a wanton infliction of pain and a constitutional violation." *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015).

Mr. Wesley alleges that, after being stabbed several times in the neck and back, he "begg[ed] for help" from Officer Grisheimer by "repeatedly knock[ing] on the officer station's window." (Doc. 1 at 4-5). According to the complaint, Officer Grisheimer "intentionally ignored" Mr. Wesley for five minutes while "fraterniz[ing]" with another inmate. (*Id.* at 5). At the screening stage, these allegations are sufficient to state a claim against Officer Grisheimer for deliberate indifference to serious medical needs. *See, e.g.*, *Wade v. Daniels*, 36 F.4th 1318, 1327 (11th Cir. 2022) (four-minute delay in "seeking medical treatment for [plaintiff's] gunshot wound" sufficient to establish deliberate indifference to serious medical needs).

Accordingly, it is **ORDERED** that:

1. The failure-to-protect claim against John Does I and II is **DISMISSED without prejudice and with leave to amend**.

2. The claim against Officer Grisheimer for deliberate indifference to serious medical needs may **PROCEED**.

3. No later than **December 2, 2024**, Mr. Wesley must either (1) file an amended complaint that includes all claims that he wishes the Court to consider, or (2)

file a notice informing the Court that he wishes to proceed only on the deliberate-indifference claim against Officer Grisheimer.

    a. If he chooses to amend his complaint, Mr. Wesley must complete a new civil-rights complaint form, titling it "Amended Complaint." The amended complaint must include all of Mr. Wesley's claims and may not refer back to, or incorporate, the complaint. Any amended complaint will be subject to initial screening under 28 U.S.C. § 1915A.

    b. The Court cautions Mr. Wesley that "fictitious-party pleading is [generally] not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). If he elects to file an amended complaint, Mr. Wesley must provide sufficient information about John Does I and II to identify and serve them.

4. Mr. Wesley must advise the Court of any change of address. He must entitle the paper "Notice to the Court of Change of Address" and must exclude any motions from the notice. Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

5. The Clerk is **DIRECTED** to mail to Mr. Wesley a copy of the standard prisoner civil rights complaint form.

**DONE** and **ORDERED** in Tampa, Florida, on November 1, 2024.

                                          WILLIAM F. JUNG
                                          UNITED STATES DISTRICT JUDGE